UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KRISTIN ROSOL,                              )          NO. EDCV 08-1692 AGR
                                            )
          Plaintiff,                        )
                                            )
     v.                                     )
                                            )          MEMORANDUM OPINION AND
MICHAEL J. ASTRUE,                          )          ORDER
Commissioner of Social Security,            )
                                            )
          Defendant.                        )
                                            )

     Kristin Rosol filed this action on November 21, 2008.  Pursuant to 28

U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge

Rosenberg on November 26, 2008 and January 23, 2009.  (Dkt. Nos. 6-7.)  On

June 15, 2009, the parties filed a Joint Stipulation ("JS") that addressed the

disputed issues.  (Dkt. No. 14.)  The Court has taken the matter under

submission without oral argument.

     Having reviewed the entire file, the Court remands this matter to the

Commissioner for proceedings consistent with this Opinion.

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.**

## PROCEDURAL BACKGROUND

On February 2, 2006, Rosol filed an application for disability insurance benefits.  Administrative Record ("AR") 10.  The application was denied initially and upon reconsideration.  AR 47-48.  An Administrative Law Judge ("ALJ") conducted a hearing on April 24, 2008, at which Rosol, a medical expert ("ME"), and a vocational expert ("VE") testified.  AR 28-46.  On June 26, 2008, the ALJ issued a decision denying benefits.  AR 7-18.  On September 26, 2008, the Appeals Council denied Rosol's request for review.  AR 1-4.

This lawsuit followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

///

///

///

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.

## DISCUSSION

### A.   Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.   The ALJ's Findings

The ALJ found that Rosol meets the insured status requirements through December 31, 2003.  AR 12.

Rosol has the following severe impairment:  bipolar disorder.  *Id.*  Rosol has the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: moderately complex tasks with up to three to four steps of instructions; and occasional non-intense contact with others.  AR 13.  Rosol is unable to perform past relevant work.  AR 16.  However, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  AR 17.

### C.   The Medical Evidence

The ALJ accepted treating psychiatrist Dr. John's initial evaluation dated November 3, 2004, which indicated impaired concentration.  AR 15, 479-83.  At the initial evaluation, Dr. John found Rosol's psychomotor behavior to be within normal limits, with a cooperative attitude, appropriate speech and mildly elevated mood.  AR 480-81.  Dr. John estimated Rosol's intellectual functioning to be average, her judgment to be within normal limits, and her concentration to be impaired (as distinguished from adequate or severely impaired).  AR 481-82.

3

1    However, the ALJ did not give great weight to Dr. John's Mental

2    Impairment Questionnaire dated May 9, 2007.  AR 15, 445-50.  Dr. John checked

3    the box for "unable to meet competitive standards" as to Rosol's ability to

4    maintain regular attendance and be punctual within customary tolerances, sustain

5    an ordinary routine without special supervision, complete a normal workday and

6    workweek without psychological interruptions, perform at a consistent pace

7    without unreasonable rest periods, deal with normal work stress, and deal with

8    stress of semiskilled or skilled work.  AR 447-48.  Although the form requested an

9    explanation of those limitations, Dr. John provided none.  *Id.*  Dr. John assessed

10   moderate limitations on activities of daily living, social functioning, and

11   deficiencies of concentration, persistence or pace, but found three episodes of

12   decompensation within a 12-month period, each of which lasted at least two

13   weeks.  AR 449.  Although the form asked for dates of the episodes, Dr. John

14   provided none.  *Id.*  Dr. John estimated that Rosol would be absent from work

15   more than four days per month.  *Id.*

16   An opinion of a treating physician is given more weight than the opinion of

17   non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

18   "Where the treating doctor's opinion is not contradicted by another doctor, it may

19   be rejected only for 'clear and convincing' reasons supported by substantial

20   evidence in the record."  *Id.* at 632 (citation omitted).  When, as here, a treating

21   physician's opinion is contradicted by another doctor, "the ALJ may not reject this

22   opinion without providing 'specific and legitimate reasons' supported by

23   substantial evidence in the record.  This can be done by setting out a detailed

24   and thorough summary of the facts and conflicting clinical evidence, stating his

25   interpretation thereof, and making findings."  *Id.* at 632 (citations omitted).

26   Rosol appears to argue in her reply that Dr. John's opinion is

27   uncontradicted.  JS 6.  The medical expert expressed an opinion as to Rosol's

28   abilities that contradicted Dr. John.  A non-examining physician's opinion

4

1   is sufficient to establish a conflict among medical opinions even if it could not

2   constitute substantial evidence for rejecting a treating physician's opinion.  *See*

3   *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2005).

4          The ALJ discounted Dr. John's evaluation based on the medical expert's

5   testimony and because the evaluation was a check-the-box report whose

6   limitations were inconsistent with Dr. John's treatment records and Rosol's good

7   response to medication when compliant and not binge drinking.[1]  AR 15-16.

8          The ALJ asked for and considered the opinion of a medical expert, Dr.

9   Glasmire.  AR 16, 20 C.F.R. § 404.1527(f)(iii).  It is undisputed that the ME did

10  not have Dr. John's treatment records because they were submitted after the

11  hearing.  AR 16, 36, 452.  The ME felt he had "insufficient evidence really to

12  comment on" episodes of decompensation because there were no treatment

13  records and Dr. John's May 9, 2007 evaluation provided no dates or evidence on

14  that issue.  AR 39-40.  The ME also stated that there was insufficient evidence to

15  determine whether Rosol met the C criteria for the same reason.  AR 40.  The

16  ME's limitations were "[b]ased on the records I've reviewed," which did not

17  include treatment records.  *Id.*

18         The ALJ stated that he gave "great weight" to the ME's opinion.  AR 16.  A

19  non-examining physician's opinion constitutes substantial evidence when it is

20  supported by other evidence in the record and consistent with it.  *Andrews v.*

21  *Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  However, a non-examining

22  physician's opinion cannot by itself constitute substantial evidence.  *Widmark*,

23  454 F.3d at 1066 n.2.  The ME stated that his opinion was based only on the

24  records he reviewed and stated repeatedly that he found insufficient evidence

25  based on the absence of treating records.  AR 36, 39-43.  Having relied upon the

26  ───────────────

27         [1]  The ALJ accepted Dr. John's Global Assessment of Functioning (GAF)
    score of 60, which indicates moderate symptoms defined as "more than a slight
28  limitation in this area but is still able to function satisfactorily."  AR 15 n.1.  The
    ALJ found that moderate symptoms were not inconsistent with his findings.  *Id.*

1    ME's opinion, the ALJ is not free to ignore the ME's equivocal testimony that

2    there was insufficient evidence without treatment records to review.  *Cf.*

3    *Tonapetyan v. Halter*, 242 F.3d 1144, 1150-51 (9th Cir. 2001) (ALJ erred in failing

4    to develop record where ME's testimony, on which ALJ relied, indicated need for

5    a more complete report from the doctor).[2]  The ME's testimony does not

6    constitute substantial evidence to discount Dr. John's opinion.

7         Rosol submitted the treatment records after the hearing.  AR 16, 452.  An

8    ALJ may reject a treating physician's opinion that is unsupported or contradicted

9    by treatment records.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.

10   2005); *Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ

11   may reject conclusory and unsupported check list report); *Thomas v. Barnhart*,

12   278 F.3d 947, 957 (9th Cir. 2002); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir.

13   1996) (ALJ may reject check-off report that did not explain bases of conclusions).

14   As discussed above, the report itself did not provide explanations for Dr. John's

15   limitations.  The ALJ interpreted Dr. John's treatment records as reflecting good

16   response to medications when she is compliant, except during the time period

17   surrounding Rosol's father's death when Rosol drank heavily.  Even then, Rosol's

18   condition during that time period was brought on by a situational event and

19   resolved.  AR 15.

20        The ALJ's interpretation of the treatment records as reflecting good

21   response to medications except during binge drinking does not appear to be

22   supported by substantial evidence.  *See Holohan v. Massanari*, 246 F.3d 1195,

23   1205 (9th Cir. 2001) (insufficient evidence to support ALJ's finding of conflict

24   between opinion and treatment notes).  During the period November 2004 until

25   June 2005 (when Rosol's father died), Rosol "is definitely doing better with the

26

27        [2]  The ALJ did not fail to develop the record in this case.  The treatment
     records were requested on more than one occasion, and arrived after the
28   hearing.  AR 36, 452.

1  depression and is able to get up and do things around the home."  AR 474; AR

2  472-78.  However, there continue to be reports of mood swings, although without

3  rage episodes or excessive shopping.  AR 473, 475-76.  In June 2005, Rosol

4  "went manic for 2 weeks and spent $1000" and "then went depressed for 3 days."

5  AR 472.  In August 2005, Rosol reported "some mood swings with irritability and

6  mild depression."  AR 471.  In October 2005, Rosol reported a "hypomanic

7  episode for 2 weeks and then crashed."  AR 470.  In the period November 2005

8  through March 2006, Rosol reports being depressed over her mother's lawsuit

9  and the breakdown of that relationship.  AR 466-69.  During May-September

10  2006, Rosol had panic and depression, mixed with racing thoughts and insomnia

11  associated with having to move out of her home.  AR 463-65.  In November 2006,

12  Rosol reports "definitely doing better with her mood" with her switch to Zoloft.  AR

13  462.  However, in January through March 2007, Rosol again has trouble with her

14  mood and depression.  Dr. John notes that "Pt to be hospitalised if not doing

15  well."  AR 460-61.  In May 2007, Rosol again reports "doing reasonably well on

16  the combination of meds she is on right now with some break through anxiety and

17  agitation," and states that she is doing things around the home.  AR 459.  In July

18  2007, Rosol reports that she went into hypomania, then drank heavily due to the

19  anniversary of her father's death and went into depression.  AR 458.  There is no

20  improvement through February 2008, when none of the medications seem to

21  work and she is still experiencing mood swings throughout the day.  AR 454-57.

22      On remand, the ALJ should consult a medical expert and provide him or

23  her with Dr. John's treatment notes.  In addition, the court notes that the ALJ

24  found that the date last insured was December 31, 2003.  "[T]o obtain disability

25  benefits, [a claimant] must demonstrate he was disabled prior to his last insured

26  date."  *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991).  The claimant

27  "bears the burden of proof and must prove that he was 'either permanently

28  disabled or subject to a condition which became so severe as to disable [him]

7

1  prior to the date upon which [his] disability insured status expired.'" *Armstrong v.*

2  *Commissioner of the SSA*, 160 F.3d 587, 589 (9th Cir. 1998) (citation omitted).  If

3  the "medical evidence is not definite concerning the onset date and medical

4  inferences need to be made, SSR 83-20 requires the administrative law judge to

5  call upon the services of a medical advisor and to obtain all evidence which is

6  available to make the determination."  *DeLorme v. Sullivan*, 924 F.2d 841, 848

7  (9th Cir. 1991).  The onset date must be "supported by the evidence."  *See* Social

8  Security Ruling ("SSR") 83-20.[3]

9        **D.    Step Two Analysis**

10       Rosol appears to argue that the ALJ erred in failing to find her migraines

11  constitute a severe impairment.  JS 6-7.

12       At Step Two of the sequential analysis, the claimant bears the burden of

13  demonstrating a severe, medically determinable impairment that meets the

14  duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S.

15  137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  To satisfy the duration

16  requirement, the severe impairment must have lasted or be expected to last for a

17  continuous period of not less than 12 months.  *Id.* at 140.

18              Your impairment must result from anatomical, physiological,

19              or psychological abnormalities which can be shown by

20              medically acceptable clinical and laboratory diagnostic

21              techniques.  A physical or mental impairment must be

22              established by medical evidence consisting of signs,

23              symptoms, and laboratory findings, not only by your

24              statement of symptoms.

25  _____

26       [3] Social Security rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it

27  administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882

28  F.2d 1453, 1457 (9th Cir. 1989) (footnotes omitted).

1   20 C.F.R. § 404.1508; 20 C.F.R. § 416.908.  "[T]he impairment must be one that

2   'significantly limits your physical or mental ability to do basic work activities.'"[4]

3   *Yuckert*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen*, 80

4   F.3d at 1290 ("[A]n impairment is not severe if it does not significantly limit [the

5   claimant's] physical ability to do basic work activities.") (citation and internal

6   quotation marks omitted).

7        "An impairment or combination of impairments may be found 'not severe

8   *only if* the evidence establishes a slight abnormality that has no more than a

9   minimal effect on an individual's ability to work.'"  *Webb v. Barnhart*, 433 F.3d

10   683, 686-87 (9th Cir. 2005) (emphasis in original, citation omitted).  Step Two is

11   "a *de minimis* screening device [used] to dispose of groundless claims" and the

12   ALJ's finding must be "'clearly established by medical evidence.'" *Id.* at 687

13   (citations and quotation marks omitted).

14        Rosol does not identify medical records indicating a severe impairment of

15   migraines that lasted or is expected to last for a continuous period of not less

16   than 12 months.  There is a reference to headaches in treatment notes during the

17   period November 2000 through March 2001.  AR 244-55.  There is no definitive

18   diagnosis of migraines.  AR 254-55.  A February 2001 notation states that Rosol's

19   "headaches are virtually gone."  AR 246.  In March 2001, there is a referral to a

20   psychiatrist for evaluation of "various types of migrainous disorders associated

21   with mood disorders."  AR 244.  The headaches are "not disabling."  *Id.*  The next

22   episode appears to have occurred in February 2003.  AR 267.  While the

23   physician agreed that visual paroxysms are consistent with migraine, he stated

24

25        [4]  The ability to do basic work activities includes "physical functions such as
26   walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling,"
     "capacities for seeing, hearing, and speaking," "understanding, carrying out, and
27   remembering simple instructions," "use of judgment," "responding appropriately to
     supervision, co-workers, and usual work situations," and "dealing with changes in
28   a routine work setting." *Yuckert*, 482 U.S. at 168 n.6 (internal quotations
     omitted); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

9

that her symptoms were "most consistent with a complex partial seizure."  AR 268.  In January 2005, there is a reference to Nexium being discontinued due to headaches.  AR 316.  Rosol last complained of headache pressure in May 2006.  AR 334.  The ALJ did not err.

**E.    Hypothetical to the Vocational Expert**

The ALJ may rely on testimony a vocational expert gives in response to a hypothetical that describes "all of the limitations that the ALJ found credible and supported by substantial evidence in the record."  *Bayliss*, 427 F.3d at 1217-18. The ALJ is not required to include limitations that are not in his findings.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001);  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

On remand, the ALJ is free to revisit the issue of his hypothetical to the vocational expert if appropriate after further analysis of the treating physician's records and Rosol's residual functional capacity.

**IV.**

**ORDER**

IT IS HEREBY ORDERED that this matter is remanded for proceedings consistent with this Opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED:  September 25, 2009

_____
ALICIA G. ROSENBERG
United States Magistrate Judge

10